ARTHUR HAUSER v. STATE OF NEBRASKA.

FILED DECEMBER 1, 1917. No. 19862.

1. **Venue: APPLICATION FOR CHANGE: REVIEW.** A motion for a change of venue is directed to the discretion of the trial judge, and unless an abuse thereof is disclosed by the record his ruling will not be reversed in the supreme court.

2. **Identification of defendant** as the person who committed the felony charged, *held* sufficient.

3. **New Trial: RULING.** Where the presiding judge is unavoidably prevented from ruling on the motion for a new trial, another judge may perform that duty.

ERROR to the district court for Douglas county: JAMES P. ENGLISH, JUDGE. *Affirmed.*

*R. S. Horton* and *J. E. Bednar,* for plaintiff in error.

*Willis E. Reed, Attorney General,* contra.

ROSE, J.

In a prosecution by the state in the district court for Douglas county, Arthur Hauser, defendant, was convicted of murder in the first degree and was sentenced to the penitentiary for life. As plaintiff in error, he presents for review the record of his trial.

One of the assignments of error challenges the overruling of a motion for a change of venue. It is contended that the public mind was inflamed against defendant by reports that he was guilty and that he had committed other

cruel and revolting crimes. In this connection it is argued that the prejudice shown was sufficient to prevent accused from having a fair trial in the city of Omaha, where the homicide occurred. To establish these propositions defendant relies on testimony of newspaper reporters and on articles in the daily press. The inquiries which prompted individual expressions of prejudice to which the reporters testified were directed to a small number of persons, when compared with the public generally. The expressed prejudice against accused resulted principally from newspaper reports. It does not necessarily follow that, in a great center of population like Douglas county, there was thus established public prejudice or ill feeling sufficient to prevent a fair and impartial trial before an unbiased jury, limited in their deliberations to proper proofs of the felony charged. Threats of violence were not shown. There was no attempt to interfere with an orderly trial. On review there is no suggestion that any juror impaneled had been influenced or prejudiced against defendant, or that any juror, during the trial, was guilty of misconduct. The motion was directed to the discretion of the trial court, and the conclusion is, upon a consideration of the entire record, that an abuse of discretion in denying a change of venue is not shown. The assignment of error is therefore overruled.

The insufficiency of the evidence to sustain the verdict is also urged as a reason for reversing the judgment. The failure of proof, according to the defense, is the lack of identification of accused as the person guilty of the felony charged. The point does not seem to be well taken. Near the intersection of Thirty-first and Dodge streets in Omaha, William H. Smith was feloniously shot and killed about 10 o'clock at night October 16, 1915. It had been raining and the night was dark. When shot Smith was walking with Grace Slater, who was on her way to her home. The victim was left where he fell. Following the homicide, for an hour perhaps, Grace Slater was involuntarily in the company of the person who did the shooting. During most of that time she was compelled to walk ahead of the felon

at arm's length. They walked in vacant lots where there were weeds and bushes. Sometimes they were in the streets. At other times they were in the shadows of buildings. He talked almost constantly. Finally he took what money she had, gave her five cents, and permitted her to depart on a street car. This is a portion of her story as told on the witness-stand, and it is not questioned. At one time she expressed a doubt about being able to identify the felon without hearing his voice. Later, however, she did thus identify defendant in a prison in Wichita, Kansas. From there he was taken to Omaha, tried and convicted. Defendant challenges the identification on the following grounds: The night was dark. The man who shot Smith was behind Grace Slater during all of the time they were together. At first he wore a mask. Without it she did not see his face. Before seeing defendant at Wichita she admitted she could not by sight identify the person who shot Smith. The record answers the argument on this point by evidence tending to prove the following facts: It was not raining all of the time Grace Slater was in the custody of the felon, and he was then without a mask. She saw the side of his face a number of times. She saw him in the light of the street lamp. She observed his stature and clothing. She recognized his voice and identified him positively. He was in Omaha when Smith was killed. Defendant was observed not far from the scene of the felony both before and after it was committed. Under the circumstances the jury were justified in finding that a front view of his face was not necessary to identification. Recognition of a profile is not uncommon and is not necessarily unreliable. In photography the profile is common as a likeness. The mental faculties of Grace Slater, while observing the felon on the night of the homicide, would naturally be aroused by the tragedy, by the distressing experiences which followed, and by her own peril. Her account of the ordeal indicates that she did not lose her self-possession. Frequent observations at arm's length, even at night, when the mind is alert, may make deep and accurate impressions. The conclusion is

that the identification and the other evidences of guilt are sufficient to sustain the verdict.

The final assignment of error argued is the overruling of the motion for a new trial. The chief proposition under this head is that a judge who does not preside at the trial is without authority to pass on the motion for a new trial. The judge before whom the present case was tried died before passing on the motion for a new trial and it was overruled by another judge. It is argued that the trial judge is a part of the tribunal to try the issues of fact, and that he hears the testimony, observes the witnesses and takes note of all that affects the rights of accused while in court. Defendant insists that he lost the advantages which personal observation gave to the presiding judge. There is force in this argument, and the advantages which the presiding judge obtains by his presence in court should be seriously considered in the deliberations on each case where necessity requires another judge to act on a motion for a new trial. While the courts are not in harmony in their answers to the question here presented, this court has taken a view at variance with the contention of defendant herein. *State* v. *Gaslin,* 32 Neb. 291; *Lauder* v. *State,* 50 Neb. 140; *Goos* v. *Krug Brewing Co.,* 60 Neb. 783. Adherence to the rule announced in these cases results in the overruling of this assignment of error, an abuse of discretion in denying a new trial not having been shown.

AFFIRMED.

SEDGWICK, J., not sitting.